UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                                       Criminal No. 18-CR-20551

vs.                                                                HON. BERNARD A. FRIEDMAN

JOHN MACCOLL,

    Defendant.

_____/

## OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

This matter is presently before the Court on defendant's motion for compassionate release [docket entry 25]. The government has filed a response in opposition. Defendant has not replied, and the time for him to do so has expired. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the following reasons, the Court shall deny the motion.

In February 2019, the Court sentenced defendant to a 108-month prison term after he pled guilty to one count of wire fraud. The parties' Rule 11 plea agreement set forth the following factual basis for the charge:

> Defendant John Maccoll worked for UBS Financial Services (UBS), in Birmingham, Michigan as a Financial Advisor. As such, he communicated directly with UBS's clients seeking investment advice. From in or around April 2010 until March 2018, Maccoll fraudulently advised some of UBS's clients to send their money directly to his personal account in order to invest in funds that were not available through UBS, including specifically the Hatteras Fund. Maccoll convinced these clients that this fund was successful and profitable and advised the clients to invest in it more than once.
>
> The following are three examples of victims sending their

money directly to Maccoll:

- Victim E.W. wrote 14 checks to Maccoll for the Hatteras investment from 2013 to 2016 totaling an estimated $820,231. These checks were deposited into Maccoll's Bank of America personal accounts ending in 8555 and 9502.

- Victim S.P. wrote 15 checks to Maccoll for the Hatteras investment from 2010 to 2015 totaling an estimated $411,654. These checks were deposited into Maccoll's Bank of America personal account ending in 8555.

- Victim P.M. wrote 15 checks to Maccoll for the Hatteras investment from 2016 to 2018 totaling an estimated $881,519. These checks were deposited into Maccoll's Bank of America personal accounts ending in 8555 and 9502, and 1201.

In total, Maccoll fraudulently received over $3,700,000 from more than ten UBS clients from April 2010 until March 2018 when his scheme was uncovered. Maccoll did not invest his clients [sic] money in the Hatteras Fund or in another fund as he led his clients to believe, rather, he misappropriated the money for his personal use. . . .

Rule 11 Plea Agreement ¶ 1C.

Defendant, who is serving his sentence at FCI-Morgantown in Morgantown, West Virginia, seeks compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)[1] "due to the COVID-

---

[1] Section 3582(c) states in relevant part:

Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau

19 pandemic and the risks it poses to federal inmates and staff." Def.'s Mot. at 1. Defendant questions the effectiveness of the measures the Bureau of Prisons has taken to prevent the spread of the virus. He believes he is especially vulnerable to complications were he to be infected because he is 67 years old and has the following medical conditions: blood clots for which he takes blood-thinning medication, chronic leg swelling and joint pain, elevated PSA level, "had 50% of colon removed due to benign [polyps] growth," "beginning [cataracts]," chronic arthritis in both legs, "high blood pressure and water retention," under-active thyroid, chronic anemia, and high cholesterol. *Id.* at 3. Defendant contends that he "is at a heightened risk due to underlying medical conditions as well as being unable to socially distance from other inmates and staff." *Id.* at 4. He concedes that "there are no confirmed cases of COVID-19 at Morgantown," although he suspects that the disease "is lurking outside the prison." *Id.*.

Defendant submits no evidence to support his contention that his various medical conditions make him more susceptible to infection or to complications if he were to become infected with the coronavirus. Defendant says he has hypertension, but this is a common medical condition shared by over 100 million Americans. *See United States v. Colbert*, No. 99-80399, 2020 WL 3529533, at *2 (E.D. Mich. June 30, 2020). Further, current medical

of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction
. . . .

research indicates that "the link between hypertension and COVID-19 is unclear." *See* https://www.acc.org/latest-in-cardiology/articles/2020/07/06/08/15/covid-19- and-hypertension (last visited Aug. 4, 2020). This Court has noted the uncertain link between hypertension and susceptibility to COVID-19 complications. *See United States v. Jordan*, No. 09-CR-20490, 2020 WL 4016087, at *2 (E.D. Mich. July 16, 2020) (noting that "the CDC believes that hypertension 'might be' a COVID-19 risk factor, but this determination is still uncertain"). The Court is not aware, and defendant has not shown, that any of his other medical conditions are recognized COVID-19 risk factors.

Defendant has failed to show that his health and safety are at serious risk. As this Court noted in *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020), a "generalized risk of contracting COVID-19 and potentially developing . . . more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission." *See also United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility[,] . . . whether Defendant will contract COVID-19, and whether he will develop serious complications does not justify the extreme remedy of compassionate release."). In the present case, as in *Peaks* and *Shah*, defendant's motion is based entirely on speculation and generalized risk.

The Court concludes that defendant has failed to show the existence of any extraordinary and compelling reason warranting his immediate release from prison. Accordingly,

       IT IS ORDERED that defendant's motion for compassionate release is denied.

                                          s/Bernard A. Friedman
                                          Bernard A. Friedman
Dated: August 5, 2020          Senior United States District Judge
       Detroit, Michigan

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 5, 2020.

John Maccoll, #56837039        s/Johnetta M. Curry-Williams
Morgantown Federal Correctional Institution    Case Manager
Inmate Mail/Parcels
P.O. BOX 1000
MORGANTOWN, WV 26507